AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

iStorage Self Storage, Unit 2322C (consists of Unit 2322
and 2323), 4820 Trinity Church Road,
Harrison Township, Ohio

Case No. 3:21MJ352

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A

located in the \_\_\_\_\_Southern\_\_\_\_\_ District of \_\_\_\_\_Ohio\_\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 and 841(a)(1) | Conspiracy to possess with intent to distribute a controlled substance |
| 18 USC 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Jason Barnes, DEA

Sworn to before me and signed in my presence via facetime.

Date: 9/23/21

City and state: Dayton, Ohio

Sharon L. Ovington, U. S. Magistrate Court
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Jason M. Barnes, a Task Force Officer (TFO) of the Drug Enforcement Administration, United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

## INTRODUCTION

1.      Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2.      I am a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA") and have been since January 2019. I have been employed in law enforcement since December 2001. I currently serve as an officer with the Dayton Police Department ("DPD"). I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau. I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs and gun related offenses. I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotic purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

1

3.      Along with other agents and task force officers of the DEA and other agencies, your Affiant is currently involved in an investigation into a Drug Trafficking Organization (DTO) regarding violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) as well 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm).   This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises, more particularly described in Attachment A, incorporated herein by reference, for the items described in Attachment B, incorporated herein by reference:

        a.  **iStorage Self Storage, Unit 2322C (Consists of Unit 2322 and Unit 2323 with the interior wall having been previously removed), 4820 Trinity Church Road, Harrison Township, Ohio** (hereinafter referred to as the **"TARGET UNIT"**)

4.      As outlined below, there is probable cause to believe violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) as well 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm) are being committed, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located in the **TARGET UNIT.**

5.      Affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from Affiant's participation in this investigation, conclusions Affiant has reached based on Affiant's training and experience, and upon information Affiant believes to be reliable from the following sources:

a. Law enforcement databases

b. Oral and written reports about this investigation and other investigations, which affiant has received from federal agents and agents from state and local law enforcement agencies;

c. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to affiant either directly or indirectly;

d. Information developed from a confidential source.

This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not contain all the facts known to me regarding this matter. The communications and conversations described in this Affidavit have been summarized, paraphrased and/or synthesized and have not necessarily been recounted in full or verbatim.

## PROBABLE CAUSE

6.　　The United States, including the Drug Enforcement Administration Dayton Resident Office, is conducting a criminal investigation of Eric Wiggins (hereinafter referred to as WIGGINS), and others concerning potential violations of federal drug trafficking laws.

7.　　On or about July 20, 2021, while conducting surveillance on a recent drug complaint in the 900 block of Windsor Avenue, Dayton Police Department Narcotics Detectives ("DPD") observed a male, later identified as Eric L. WIGGINS, exit the front entrance door to 918 Windsor Avenue. WIGGINS was wearing a brown backpack and was locking the wrought iron door with a set of keys.

3

a.       Shortly after, DPD observed another male park in front of 918 Windsor Avenue in a grey Dodge truck. WIGGINS approached the male in the Dodge truck and was handed two plastic shopping bags by the unknown male. Both bags appeared to be full, as DPD could see a large bulge in the bottom of them as WIGGINS walked away from the male. The male in the Dodge truck left and continued southbound on Windsor Avenue before making a left-hand turn to travel eastbound onto Superior Avenue.

b.       WIGGINS immediately walked away from the Dodge truck and got into the driver's seat of a Honda Odyssey (hereinafter referred to as Odyssey) parked on the street. WIGGINS pulled away from the curb and failed to signal onto West Grand Avenue. DPD asked over the radio for assistance with a traffic stop, and Officers Michael C. Beane and Steven P. Lloyd informed they were in the area. DPD maintained surveillance of WIGGINS until Officers Beane and Lloyd could conduct a traffic stop. DPD observed additional traffic infractions for a signal violation at Wawona Road and Philadelphia Drive, along with a violation of failing to stop prior to the stop bar at Philadelphia Drive and Salem Avenue. A record check on a law enforcement database revealed the Odyssey is registered to Eric L. WIGGINS at 20 Salisbury Drive, Dayton, Ohio.

c.       Officers Beane and Lloyd were able to conduct a traffic stop on WIGGINS at Markey Road near Park End Drive. Officer Beane approached the driver's side and contacted WIGGINS. Officer Lloyd approached the passenger side and could smell marijuana emanating from the vehicle. Officer Beane asked WIGGINS for his driver's license, and WIGGINS provided Officer Beane with his passport. Officer Lloyd indicated that WIGGINS appeared to be nervous, and he observed WIGGINS shaking while speaking with the officers, as both of his hands were shaking and would not remain still. WIGGINS then told the

4

officers that they would smell weed in the vehicle, and that he had been smoking weed. Upon observing WIGGINS' nervous behavior, Officer Lloyd asked that he step out of the vehicle. Officer Beane patted WIGGINS down for officer safety, and immediately felt a handgun in WIGGINS' shorts. WIGGINS was placed into handcuffs for officer safety and told the officers he had a gun. Officer Lloyd asked WIGGINS why he didn't tell them he had a firearm, and he stated he did not think they would ask him to get out of the car.

      d.      WIGGINS was placed under arrest for having weapons while under disability and escorted to the backseat of the officer's cruiser. Officer Randy P. Betsinger along with his canine "Hugo" responded to conduct a free-air sniff of the Odyssey. Hugo, a 3-year-old German Shepherd, is certified by the Ohio Peace Officers Training Academy in narcotics detection. His imprinted odors are for marijuana, heroin, cocaine, methamphetamine, and their derivatives. Hugo, handled by Officer Betsinger, gave a positive alert on the Odyssey. Based on the alert, Officer Betsinger concluded that the odor of one of the drugs that canine Hugo is trained and certified to detect was present.

      e.      Officers Beane and Lloyd conducted a search of the Odyssey. When opening the driver door, they could see a marijuana cigarette on the floorboard. The officers observed two plastic grocery bags and a brown bag on the passenger side of the vehicle. All three bags contained a large amount of currency. The money recovered was later taken to Fifth Third Bank and counted to be $113,885. The gun recovered from this incident was tagged into the Dayton Police property room.

      f.      DPD read WIGGINS his Miranda warnings from a card provided by the City of Dayton Prosecutor's Office. WIGGINS agreed to speak without a lawyer present.

5

WIGGINS stated he owned the property at 918 Windsor Avenue when DPD saw him leave there. DPD asked him if there was anything else inside the house, and WIGGINS stated that there was a little bit of marijuana inside the house. WIGGINS clarified his statement by saying approximately four to five pounds of marijuana was inside the house.

        g.     As part of this investigation, DPD obtained a search warrant for 918 Windsor Avenue, Dayton, Ohio 45402-5750. The search warrant was signed by the Honorable Dayton Municipal Court Judge Carl S. Henderson on July 20, at 5:07 PM.

        h.     On July 20, 2021, at 6:05 PM, the Dayton Police Department – Narcotics Bureau served the search warrant at 918 Windsor Avenue. A search of 918 Windsor Avenue was conducted by DPD. Drug manufacturing equipment, kilogram wrappers, a handgun, 4 vacuum sealed bags with marihuana, 6 large bags of marihuana, suspected fentanyl, large digital scale and a respirator mask were just some of the items recovered.

        i.     After these discoveries, WIGGINS agreed to assist law enforcement.

    8.     On or about September 21, 2021, WIGGINS contacted and informed investigators that someone had fronted him 3 kilograms of "food" on September 20, 2021. "Food" is a common term for heroin. It should be noted that law enforcement did not authorize WIGGINS to accept delivery of these drugs. Nor did he advise law enforcement on September 20, 2021 that he had received these drugs. WIGGINS stated he was in contact by phone with a foreign national WIGGINS knew as Mi Hermano (hereinafter referred to as "MI HERMANO") on September 20, 2021. During the conversation, MI HERMANO directed a courier to deliver and

front[1] 3 kilograms of suspected heroin to WIGGINS.  WIGGINS stated that he took custody of the 3 kilograms of suspected heroin from the courier.  WIGGINS stated the courier had MI HERMANO on the phone during the drug transaction.  WIGGINS called investigators on September 21, 2021.

9.      On September 21, 2021, investigators met with WIGGINS and took custody of the 3 kilograms of suspected heroin.  After arriving at DEA's offices, WIGGINS spoke with investigators.  WIGGINS stated that he had kept the 3 kilograms of suspected heroin on the back porch of an abandoned house next to 20 Salisbury Drive, Harrison Township, Ohio. (Investigators know that WIGGINS owns 20 Salisbury Drive.  They have conducted physical surveillance on 20 Salisbury Drive and observed vehicles registered to WIGGINS commonly parked at 20 Salisbury Drive to include an abandoned house next to 20 Salisbury Drive). WIGGINS signed a consent to search form of a 2018 grey Honda Odyssey, Ohio license plate JLY8293 he drove to the DEA office.  During a search of the Odyssey, investigators located a tan backpack inside.  Inside the backpack was a payment receipt from the **TARGET UNIT** dated September 7, 2021 in the name of Antonio PERSONS.  A key for a lock was also located in the backpack.  WIGGINS stated the **TARGET UNIT** was his unit and that PERSONS, who WIGGINS described as a longtime friend, put the **TARGET UNIT** is PERSONS' name because WIGGINS was out of town when the **TARGET UNIT** was rented.  WIGGINS stated there was furniture inside the **TARGET UNIT**.  When investigators asked WIGGINS if there was anything illegal at 20 Salisbury Drive, WIGGINS stated several pounds of marijuana, approximately $70,000 in bulk United States Currency and a .22 caliber sub-compact rifle were inside the house.

---

[1] When one "fronts" drugs, they provide them on a consignment basis with payment due after the drugs have been resold.

10.     Around the time of these statements on September 21, 2021, law enforcement established surveillance at 20 Salisbury Drive and observed someone carrying a brown bag from that location. While carrying the brown bag, this person entered a car near the residence and then drove away.  A short time later, local police stopped the car for a traffic violation.  During the ensuing encounter, police ran a trained and certified narcotic detection dog around the vehicle, and it alerted to the presence of narcotics.  During the ensuing search of the vehicle, officers discovered the bag inside of the car; the bag contained thousands of dollars in US Currency. Based on my training and experience, I believe that these funds represented drug proceeds that someone had attempted to remove from 20 Salisbury Drive.  This discovery corroborated WIGGINS' admissions that evidence of drug trafficking crimes would be found at 20 Salisbury Drive.

11.     Affiant has reviewed WIGGINS' criminal history, and I know that he has prior state convictions for felonious assault and involuntary manslaughter.  Both of those crimes are punishable by a term of imprisonment exceeding one year.

12.     Based on the foregoing as well as my training, experience and knowledge of drug trafficking modus operandi described below, Affiant believed WIGGINS was storing a firearm, bulk currency, and controlled substances at 20 Salisbury Drive.  So, on September 21, 2021, Affiant obtained a federal search warrant from the Honorable Sharon L. Ovington for 20 Salisbury Drive.  Investigators conducted a search of 20 Salisbury Drive.  Approximately, 8 kilograms of marihuana and an H & K model HK416, 22 caliber sub-compact gun were just some of the items located.

8

13.     On September 21, 2021, Affiant read an advice of rights form to WIGGINS while in the rear of a police cruiser at the DEA office.  WIGGINS signed the advice of rights form. Affiant asked WIGGINS for consent to search the **TARGET UNIT**.  WIGGINS said no. WIGGINS then said yes to the consent of the **TARGET UNIT** and said there was furniture inside.  WIGGINS admitted that the **TARGET UNIT** was his and he pays the bill for it. WIGGINS stated a key that investigators found in the backpack was a master key and would unlock the lock on the **TARGET UNIT**.

14.     On September 23, 2021, investigators along with a Dayton Police Department K-9 ran a trained and certified narcotic detection dog on the **TARGET UNIT**, and it alerted to the presence of narcotics.  The **TARGET UNIT** is located at the end of the building.  The K-9 started around the corner from the **TARGET UNIT** and ended at unit 2319.  The employee present explained to investigators that the **TARGET UNIT** consists of what was formerly two units: 2322 and 2323.  The employee went onto say that the wall that was originally between units 2322 and 2323 is no longer there and this was done to make **TARGET UNIT** larger.  The employee stated that iStorage Self Storage made units 2322 and 2323 are one unit with the unit number of 2322C.  The K-9 only alerted on the **TARGET UNIT**.  Affiant attempted to use the key lock located in the backpack on the lock of **TARGET UNIT** (Unit 2323) and it unlocked the lock.  Affiant attempted to use the key on the lock of **TARGET UNIT** (Unit 2322) and it did not unlock the lock.

15.     Based on my training and experience, WIGGINS likely uses **TARGET UNIT** to store narcotics. Based on my training, experience, participation in other drug investigations, my participation in this investigation, and my discussions with other experienced agents and officers

9

of the Drug Enforcement Agency (DEA), and other federal state, and local law enforcement officers, your affiant has learned:

a. That narcotics traffickers, such as those who deal in distribution quantities of controlled substances frequently maintain at their residence, place of business or other secure premises – including locked storage units - to which they have access, amounts of illegal drugs and amounts of currency in order to maintain and finance their ongoing narcotics business;

b. That narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including cocaine. Furthermore, your Affiant from experience that the aforementioned books, records, receipts, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

c. That narcotics traffickers use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity;

d. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or place of business, for ready access and to conceal same from law enforcement authorities;

e. That persons involved in drug trafficking conceal proceeds of drug sales, records of drug transactions, firearms, ammunition, cashes of drugs, large amounts of currency, financial instruments, keys to safe deposits boxes, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and/or evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from narcotics trafficking in their residences and in other secure locations including places of business in order to conceal them from law enforcement authorities;

f. That narcotics traffickers commonly maintain records of telephone calls in billing statements, addresses or telephone numbers in books or papers which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

g. That traffickers in controlled substances, namely cocaine, commonly keep paraphernalia for the packaging, weighing, processing, and distributing cocaine. That these paraphernalia include but are not limited to scales, plastic bags, baggies, heat sealers, and other utensils used to distribute cocaine;

10

h. That your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated, at least in part, by greed, in particular, trafficking in a controlled substance;

i. That traffickers utilize vehicles to transport and conceal narcotics, and to conduct transactions inside of vehicles, out of the view of the public eye;

j. That traffickers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

## CONCLUSION

19. Based on the information above, your Affiant submits that there is probable cause to believe that the specified federal offenses have been committed and that a search of **TARGET UNIT,** to include all rooms, storage compartments, and vehicles of any kind located in **TARGET UNIT** will lead to the discovery of the items outlined above (described more fully in Attachment B, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of federal law identified above.

//

//

//

//

//

//

//

11

in **TARGET UNIT** will lead to the discovery of the items outlined above (described more fully in Attachment B, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of federal law identified above.

20.     Your Affiant therefore, respectfully requests that a warrant be issued authorizing the search of **UNIT** to include all rooms, storage compartments, and vehicles of any kind located in **TARGET UNIT** as further described in Attachment A.

Respectfully submitted,

Jason Barnes, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on September 23, 2021.

Sharon L. Ovington
United States Magistrate Judge

11

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is:

a.      iStorage Self Storage, Unit 2322C (consists of Unit 2322 and 2323), 4820 Trinity Church Road, Harrison Township, Ohio. The property is one storage unit that was formerly two units that had an inner wall removed within the facility.  The numbers 2322 and 2323 are listed in black to the right of each maroon door. The property is listed below.





## ATTACHMENT B

### PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) as well 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm) including, but not limited to:

A.   Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.   Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.   Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking.

D.   Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.   Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.   Cellular telephones, including all associated telephone records and stored electronic data that may be used in the commission of these offenses;

G.   United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

H.   Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

I.   Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

2

J.     Illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

K.     Firearms and ammunition.

3